1

2

3

4

5

6

7  SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8

9  KELLY L. MARTIN, an individual,

10          Plaintiff,                          NO.

11      v.

12  AMERICAN AIRLINES GROUP, INC., a        COMPLAINT FOR DAMAGES
    Delaware Corporation; AMERICAN
13  AIRLINES, INC., a Delaware Corporation;
    and DOES 1 through 10,
14
15          Defendants.

16

17      COMES NOW the Plaintiff, Kelly L. Martin, by and through her undersigned attorneys,

18  and alleges as follows:

19                          I.      PLAINTIFF

20  1.1    Captain Kelly L. Martin (hereinafter "CPT Martin") was a resident of Tacoma, Pierce

21
    County, Washington at the time of the incident and at the time she entered into a contract of
22
    carriage with the defendants.
23
24  1.2    CPT Martin, who is an officer in the United Stated Army, has since been transferred to

25  Fort Stewart, and she now resides in Georgia.

26

COMPLAINT FOR DAMAGES – 1            **KRUTCH LINDELL BINGHAM JONES, P.S.**
                                     600 University Street, Suite 1701
                                     Seattle, WA  98101
                                     (206) 682-1505  FAX: (206) 467-1823

## II.   DEFENDANTS

2.1     At all times material hereto, Defendant American Airlines, Inc. is, and has been, a Delaware corporation headquartered in Fort Worth, Texas, and doing business in King County, Washington. At all times material hereto, American Airlines, Inc., has maintained a registered agent for service in Olympia, Washington.   American Airlines, Inc. is a legacy air carrier operating regularly scheduled commercial flights under 14 CFR Part 121 and operates flights out of Sea-Tac, King County, Washington.

2.2     At all times material hereto, Defendant American Airlines Group, Inc. is, and has been, a Delaware corporation headquartered in, Fort Worth, Texas, and doing business in King County, Washington. American Airlines Group, Inc. On information and belief, American Airlines Group, Inc., owns American Airlines, Inc.   American Airlines Group, Inc. and American Airlines, Inc. are alter egos of each other, have unified interests, and are in effect a single economic entity.

2.3     American Airlines Group, Inc. and American Airlines, Inc. are referred to jointly as "American Airlines."

2.4     Does 1-10 were employees of American Airlines, serving in their capacity as flight attendants on flight AAL767 and gate agents at the arrival gate in Philadelphia. Because their names are currently unknown to Plaintiff, they are referred to herein by their occupations. Because which particular actions and omissions should be attributed to each flight attendant and gate agent is unknown at this time, the flight attendants and gate agents are occasionally referred to generally and collectively herein. Plaintiff will amend this complaint to allege the true names and identities of said defendants, when this information is ascertained.

COMPLAINT FOR DAMAGES – 2

**KRUTCH LINDELL BINGHAM JONES, P.S.**
600 University Street, Suite 1701
Seattle, WA   98101
(206) 682-1505   FAX: (206) 467-1823

### III.   JURISDICTION AND VENUE

3.1     The Superior Court of King County, State of Washington, has subject matter

jurisdiction over this action pursuant to RCW § 2.08.010.

3.2     Jurisdiction is proper in the State of Washington because the cause of action as alleged

herein arose out of activities (to wit, the transaction of business within this state) within the

State of Washington pursuant to RCW § 4.28.185.

3.3     Venue is proper in King County pursuant to RCW § 4.12.025, because Defendants

transact business in King County, and the tortious acts and omissions that caused this incident

occurred in King County, Washington

### IV.   FACTS

4.1     On the night of May 9, 2018, CPT Martin boarded American flight AAL767, a red-eye

flight from Seattle-Tacoma International Airport in Sea-Tac, Washington, to Philadelphia

International Airport in Philadelphia, Pennsylvania. CPT Martin was seated in the window

seat.

4.2     Flight AAL767 was operated by the Defendants using an Airbus A321 aircraft.

4.3     The fuselage of the Airbus A321 is pressurized by compressed air from the engines'

turbines (known as "bleed air") while the aircraft is flying. However, like other jetliners, the

A321 fuselage is not strong enough to maintain sea-level pressure while flying at usual

cruising altitudes. Instead the aircraft is limited to a maximum pressure differential (known as

"pressure delta") between the outside air pressure and the cabin air pressure. The aircraft's

cabin has its own "altitude," representing the cabin air pressure.

COMPLAINT FOR DAMAGES – 3

4.4     As a result of the limitations on pressure delta, the cabin air pressure must climb with the aircraft, though at a slower rate, and with a lower maximum altitude (usually between 6,000 and 8,000 feet at cruising altitude).

4.5     American Airlines Flight AAL767 departed Sea-Tac at approximately 23:09 PDT. AAL767 filed for 33,000 feet.

4.6     After takeoff, AAL767 climbed at an average of 1,320 feet per minute until reaching its cruising altitude of 33,000 feet at 23:34 PDT. During that time, the cabin pressure inside AAL767 also climbed to the cabin cruising altitude.

4.7     Approximately 30 minutes into the flight CPT Martin experienced severe cramping in her lower abdomen, accompanied by nausea.

4.8     CPT Martin initially tried to remain seated to avoid waking the other passengers in her row. However, the pain quickly increased to an intolerable level and CPT Martin woke the passengers next to her so she could go to the lavatory.

4.9     Immediately after she stood up, CPT Martin began vomiting. She managed to make her way to the lavatory on the aircraft, where she vomited and/or dry heaved for an extended period of time, with increasing fatigue and pain. After a failed attempt at flagging down a flight attendant, CPT Martin was able to capture the attention of a flight attendant. CPT Martin informed him that there was something seriously wrong.

4.10    The flight attendant began asking CPT Martin a series of questions, including whether CPT Martin could be pregnant, whether CPT Martin had eaten anything unusual, whether CPT Martin had ever been sick on a plane before, and how many drinks CPT Martin had consumed before boarding the flight, or while on the flight. CPT Martin answered no to each

COMPLAINT FOR DAMAGES – 4

**KRUTCH LINDELL BINGHAM JONES, P.S.**
600 University Street, Suite 1701
Seattle, WA   98101
(206) 682-1505   FAX: (206) 467-1823

of the questions and informed him that she had consumed no alcohol before or during the flight.

4.11    CPT Martin continued to insist that there was something seriously wrong and that she had not been drinking. The flight attendant apparently did not believe CPT Martin and looked through her inflight purchase history to see if she had consumed any alcohol.

4.12    Due to overwhelming pain, CPT Martin told the flight attendant that she needed to lie down. Another flight attendant heard this request and told CPT Martin she needed to return to her seat. CPT Martin informed the attendants that she could not stand, let alone walk, and began to vomit again. She crawled into the lavatory where she continued vomiting and dry heaving.

4.13    While she was in the lavatory, CPT Martin began to lose consciousness and woke up lying on the floor.

4.14    A flight attendant found CPT Martin on the lavatory floor. Rather than obtain medical assistance, he offered ginger ale and gave her two Tylenol from his bag.

4.15    CPT Martin asked if there was anyone on the flight that could help. She was informed by a different flight attendant that they were not going to wake up the other passengers to see if there were any medical personnel on board.

4.16    CPT Martin was hit by another wave of nausea and threw up the two Tylenol along with bile. She overheard a flight attendant talking to the aircraft's pilot over the wall mounted phone, updating the pilot on her status, ensuring him that no medical attention was needed, and indicating that they should continue the flight as scheduled. At this time the second flight attendant, unable to move CPT Martin from the ground, brought her a blanket. After once

COMPLAINT FOR DAMAGES – 5

**KRUTCH LINDELL BINGHAM JONES, P.S.**
600 University Street, Suite 1701
Seattle, WA  98101
(206) 682-1505   FAX: (206) 467-1823

again vomiting and/or dry heaving, CPT Martin was moved to an empty row of seats and was buckled up by a flight attendant.

4.17    Unable to move, CPT Martin continued to vomit and/or dry heave into a trash bag for the rest of the four-and-a-half-hour flight, with extreme pain and discomfort. No medical assistance was offered and no flight crew member checked on her after placing her in the empty row.

4.18    After the aircraft landed in Philadelphia, CPT Martin was unable to disembark on her own. None of the flight attendants came to assist CPT Martin, so she pushed the flight attendant call light with no answer. CPT Martin finally got the attention of a nearby passenger and motioned for the passenger to get the flight attendant. That passenger alerted a flight attendant, and the flight attendant informed the passenger that they would address CPT Martin once they finished deboarding the rest of the plane.

4.19    After the plane was empty, the first flight attendant approached CPT Martin. CPT Martin requested help so she could disembark. This request was denied.

4.20    CPT Martin again asked for a wheelchair or medical assistance. This request was also denied.

4.21    When it became apparent that American Airlines personnel would not provide CPT Martin any assistance, she tried to make her way down the aisle to gather her property from her original seat assignment. While doing so, CPT Martin was informed by American Airlines staff that she was slowing down their ability to turn the plane around and that she needed to leave immediately. The cleaning staff became frustrated at CPT Martin's attempts to collect her belongings and forcibly pushed her personal effects into her arms.

COMPLAINT FOR DAMAGES – 6

**KRUTCH LINDELL BINGHAM JONES, P.S.**
600 University Street, Suite 1701
Seattle, WA  98101
(206) 682-1505  FAX: (206) 467-1823

4.22    After disembarking, CPT Martin again requested medical assistance from the flight attendants and gate agents. They informed CPT Martin that they would help her once they completed boarding the next flight.

4.23    The first flight attendant who attended CPT Martin asked for her boarding pass to begin a medical request. CPT Martin was then placed on an electric transport to await medical aid. The driver of the cart suggested that the gate agents call the EMTs that were assigned to the airport.

4.24    A gate agent finally called the EMTs. Prior to this call, the gate agents and flight attendants had made no effort to obtain medical assistance for CPT Martin. Medical assistance could have been obtained much sooner if the flight attendant requested the assistance of a medically qualified passenger, called a remote medical provider for advice, or re-routed the aircraft to take CPT Martin to a hospital.

4.25    While waiting for the EMTs, CPT Martin continued to vomit and/or dry heave. American Airlines' gate agents and/or flight attendants told her that she was disrupting the boarding process. CPT Martin was moved to a wheelchair and rolled to an empty corner on the other side of the boarding zone, where she was left alone.

4.26    Unable to sit upright, CPT Martin collapsed from the chair onto the floor and continued to vomit and/or dry heave into a trash bag, alternating between sitting and lying down, until medical aid arrived.

4.27    When EMTs arrived on the scene they evaluated CPT Martin and immediately began the process of taking her to the closest emergency room at Methodist Hospital.

COMPLAINT FOR DAMAGES – 7

**KRUTCH LINDELL BINGHAM JONES, P.S.**
600 University Street, Suite 1701
Seattle, WA  98101
(206) 682-1505  FAX: (206) 467-1823

4.28    CPT Martin was taken to the emergency department at Methodist Hospital in an ambulance. Upon arrival at the hospital, imaging quickly confirmed a colonic sigmoid volvulus, with a high risk of bowel ischemia.

4.29    Doctors were unable to medically manage CPT Martin's worsening sigmoid volvulus, and on May 16, she underwent an emergent subtotal colectomy/resection (i.e. her large intestine was removed).

4.30    Sigmoid volvulus is a known risk at high altitudes. Had the flight attendants obtained timely assistance from a qualified and competent medical professional, the volvulus would have been diagnosed and treatment would have been facilitated much sooner. With timely treatment, CPT Martin could have avoided a total resection of her colon.

## V.    CAUSE OF ACTION: NEGLIGENCE

5.1    American Airlines is a common carrier under Federal law and Washington law, and therefore has a duty to use the highest degree of care to ensure the safety of its passengers.

5.2    Once CPT Martin boarded the aircraft, a special relationship existed, and American Airlines had an affirmative duty to facilitate adequate medical care for CPT Martin.

5.3    The injuries suffered by CPT Martin were the direct and proximate result of the negligence of the defendants.

5.4    American Airlines is liable for the negligence of DOES 1-10 (gate agents and flight attendants) and Plaintiff's damages under the principle of *respondeat superior*.

## VI.    DAMAGES

6.1    As a direct and proximate cause of Defendants' negligence, Plaintiff suffered severe and permanent harm including, but not limited to, the following damages in an amount to be proven at trial for which she is entitled to be compensated by defendants.

COMPLAINT FOR DAMAGES – 8

6.1.1   Past, present, and future mental and physical pain and suffering; mental and emotional pain, suffering, anguish and distress; loss of ability to enjoy life;

6.1.2   Past, present, and future medical treatment expenses;

6.1.3   Past, present, and future impaired earning capacity;

6.1.4   Past, present, and future general and special damages;

6.1.5   Disability; and,

6.1.6   Such other further injuries and damages as will be proven at the time of trial.

### VII.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that the Court enter judgment against Defendants for:

1.   Special and general damages in amounts to be proven at trial;

2.   Costs and disbursements;

3.   Statutory attorney fees;

4.   If Defendant brings any frivolous or unfounded defenses, for attorneys' fees and costs pursuant to RCW 4.84.185 and/or Rule 11 of the Superior Court Civil Rules;

5.   Statutory interest on the judgment from the date judgment is entered until paid in full;

6.   Prejudgment interest on the special damages;

7.   Prejudgment interest on liquidated damages;

8.   Such other and further relief as the Court may deem just and equitable.

Dated this 27th day of March, 2020.

KRUTCH LINDELL BINGHAM JONES, P.S.

*/s/ J. Nathan Bingham*
*/s/ James T. Anderson*
James Nathan Bingham, WSBA #46325
James T. Anderson, WSBA #40494
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES – 9

**KRUTCH LINDELL BINGHAM JONES, P.S.**
600 University Street, Suite 1701
Seattle, WA  98101
(206) 682-1505   FAX: (206) 467-1823